IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

DEBORAH TYREE                                                    PLAINTIFF

V.                                    CIVIL ACTION NO. 2:11-CV-32-KS-MTP

THE HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY AND WAL-MART
ASSOCIATES HEALTH AND WELFARE PLAN                    DEFENDANTS

MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court grants Defendants' Motion for Summary

Judgment [31].

I. BACKGROUND

This is an ERISA dispute over the alleged wrongful termination of benefits.

Plaintiff is a former Wal-Mart employee. Wal-Mart maintained an employee welfare

benefit plan named the "Group Long Term Disability Plan for Employees of Wal-Mart

Stores, Inc." ("the Plan"), through which it provided long-term disability benefits to its

employees. Benefits under the plan were funded by a Group Insurance Policy (the

"Policy") issued by Hartford. The Policy served as the Plan documents, setting forth the

terms and provisions of the Plan, including claim procedures.

The Policy provides:

We will pay You a Monthly Benefit if You:
　　　　1)　　become Totally Disabled while insured under The Policy;

> 2)   are Totally Disabled throughout the Elimination Period;[1]
> 3)   remain Disabled beyond the Elimination Period; and
> 4)   submit Proof of Loss to Us.

The Policy provides that benefit payments will stop on the earliest of several dates, one of which is the date that the claimant is no longer "Disabled."

"Disability" or "Disabled" means "Total Disability or Disabled and Working (Partially Disabled)." "Total Disability" or "Totally Disabled" means:

> You are prevented from performing the Essential Duties[2] of:
>> 1)   Your Occupation or a Reasonable Alternative Job offered to You by the Employer during the Elimination Period and for the 12 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 20% of Your Pre-disability Earnings; and
>> 2)   after that, Any Occupation.

The Policy further provides that "Your Occupation" means "the Occupation that You were routinely performing for the Employer immediately prior to the date You became Disabled. We will consider Your occupation as it is performed at Wal-Mart Stores, Inc."

"Any Occupation" means:

> [A]ny occupation for which You are qualified by education, training or experience that has an earnings potential greater than the lesser of:
>> 1)   50% of Your Pre-disability earnings; or

---

[1]The "Elimination Period" means "the period of time [the claimant] must be Totally Disabled before benefits are payable," as provided in the "Schedule of Insurance." According to the Schedule, Plaintiff's Elimination Period was the later of "the first 180 consecutive day(s) of any one period of Total Disability," or "the end of [her] Employer-sponsored Weekly Disability benefits."

[2]An "Essential Duty" is a "duty that 1) is substantial, not incidental; 2) is fundamental or inherent to the job; and 3) cannot be reasonably omitted or changed." Under the policy, a claimant's "ability to work the number of hours in [her] regularly scheduled workweek is an Essential Duty."

2)   the Maximum Monthly Benefit.

In summary, the Policy provided that Hartford would pay a monthly benefit to Plaintiff if she became totally disabled. Before she could receive any benefits, she had to be totally disabled for an initial period of time – a qualifying period, so to speak. Her continued receipt of benefits depended upon her remaining totally disabled. During the first twelve months that she received payments, "total disability" was defined as not being able to perform the essential duties of her previous job or a reasonable alternative job at Wal-Mart. After the first twelve months of benefits, "total disability" was defined as not being able to perform the essential duties of *any occupation* for which she was qualified in which she could earn wages greater than the lesser of half her previous wages or her maximum monthly benefits under the Policy.

Plaintiff submitted a claim for long-term disability benefits on or around July 9, 2007. She claimed to have become disabled on or around January 10, 2007, suffering back and knee pain. On December 18, 2007, Hartford approved her claim for long-term disability benefits, effective July 25, 2007.

On January 25, 2008, Hartford sent Plaintiff a letter advising her that the definition of "totally disabled" under the Policy would change on July 25, 2008, as outlined in the above explanation of the Policy's terms and provisions. Specifically, Hartford advised Plaintiff that, after July 25, 2008, she must be prevented from performing the essential duties of any occupation to be considered "totally disabled" under the terms of the Policy. Accordingly, Hartford had begun an investigation to determine if she would qualify for benefits on and after July 25, 2008.

3

As part of its investigation, Hartford obtained an independent medical record review of Plaintiff's medical records from Dr. Joanne Werntz. Specifically, Hartford asked Werntz if, based on Plaintiff's medical records, she agreed with the functional abilities, restrictions, and limitations provided by Dr. Richard Conn, the doctor whom Plaintiff had seen for treatment of her knee pain and whose report had supported her claim for long-term disability benefits. Dr. Conn had recommended that Plaintiff be off work indefinitely due to her back and knee pain. In a report dated July 15, 2008, Dr. Werntz stated that Plaintiff's medical records did not substantiate an inability to work. Rather, Werntz stated that Plaintiff was capable of performing sedentary work that would reduce the stress on her knee and back.

On July 21, 2008, Hartford obtained an "Employability Analysis" of Plaintiff. One of Hartford's vocational case managers examined the report provided by Dr. Werntz and Plaintiff's education and work history. Based on that information, the vocational case manager concluded that Plaintiff was able to perform certain sedentary occupations on a full-time basis, and that the earning potential of those occupations met or exceeded her maximum monthly benefits.

On July 24, 2008, Hartford sent Plaintiff a letter advising her that it had completed its investigation of her claim for benefits and determined that she would not meet the policy definition of "totally disabled" as of July 25, 2008. Accordingly, she would not receive benefits beyond July 24, 2008. The letter outlined the conclusions reached in Dr. Werntz's report and the employability analysis, and it advised Plaintiff of her right to appeal the decision.

On August 25, 2008, Plaintiff sent Hartford a letter appealing the termination of her benefits. She included a letter from Dr. Conn – dated August 11, 2008 – which included his opinion that she was unable to return to any type of gainful employment. Hartford acknowledged the receipt of her letter on September 2, 2008, and advised that her claim file would be forwarded to an "Appeal Specialist."

On October 1, 2008, Hartford sent Plaintiff a letter advising her that it was obtaining another medical specialist review of her claim. Hartford sought the opinion of Dr. Donald Getz, an orthopedic surgeon employed by a third party. In preparing his report, Getz examined Plaintiff's medical records, as well as Dr. Conn's responses to a questionnaire. Getz did not agree with Conn's conclusion that Plaintiff was unable to work. He stated that the only support for Conn's conclusion was Plaintiff's subjective complaints of pain, and that little had been done in the way of treating Plaintiff's underlying medical problems, despite her complaints about the pain. Getz concluded that a diagnosis of total functional impairment was unreasonable, and that Plaintiff was able to work subject to certain restrictions.

In a letter dated October 24, 2008, Hartford advised Plaintiff that it had denied her appeal of its decision to terminate her monthly benefits. Hartford's appeal specialist explained the findings of its investigation, including the Werntz report, the Getz report, Plaintiff's medical records, the employability analysis, and the information received from Dr. Conn. Hartford's conclusion was that Plaintiff was able to perform full-time sedentary work, and that she was, therefore, not prevented from performing "any occupation" as required by the policy. Hartford advised Plaintiff of her right to

bring a civil action under ERISA.

On September 3, 2010, Plaintiff's counsel contacted Hartford to request further review of her claim. Attached to the letter were letters from Dr. Conn and Dr. Joe Kim. Dr. Conn stated that Plaintiff was unable to perform any type of gainful employment on a short or long-term basis because of chronic and severe back pain, as well as pain and limited function of her right leg. He stated that she was unable to stand for longer than a few minutes at a time, and that she was permanently disabled and unemployable for any type of gainful employment. Dr. Kim stated that Plaintiff was unable to work for at least the next six to twelve months due to her chronic pain, and potentially longer depending on her response to therapy.

On September 20, 2010, Hartford responded to Plaintiff's counsel's letter, advising that Plaintiff had exhausted the administrative remedies provided by ERISA, and that the Plan did not provide for further appeals or reopening the administrative record. Hartford further advised counsel of Plaintiff's right to pursue a civil action under ERISA. Plaintiff subsequently filed the present action, seeking review of Hartford's decision to terminate her benefits.

## II. DISCUSSION

Defendants filed a Motion for Summary Judgment [31] as to all of Plaintiff's claims. Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the

burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## A.   *Standard of Review for ERISA Disputes*

When an ERISA plan gives the plan administrator discretionary authority to construe the plan's terms and determine eligibility for benefits, the Court reviews the administrator's decision for mere abuse of discretion. *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010). It is undisputed that the Plan gave Hartford "full discretion and authority to determine eligibility for benefits and to

7

construe and interpret all terms and provisions of the Policy." Accordingly, the Court may reverse Defendant's denial of benefits only if it abused its discretion. *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009).

"A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Id.* (punctuation omitted). The Court will only find an abuse of discretion "where the plan administrator acted arbitrarily or capriciously." *Id.* (punctuation omitted). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* The Court's review of the administrator's decision "need not be particularly complex or technical;" the Court must only ensure that the decision falls "somewhere on a continuum of reasonableness – even if on the low end." *Id.* at 247.

**B.     *Hartford's Structural Conflict of Interest*s**

Plaintiff argues that Hartford, the plan administrator, was operating under a conflict of interests insofar as it both determined Plaintiff's eligibility for benefits and paid the benefits. Accordingly, Plaintiff contends that the Court should apply the "sliding scale" standard of review established in *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287 (5th Cir. 1999). *Vega*'s "sliding scale" methodology was abrogated by the Supreme Court of the United States in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008). *See Holland*, 576 F.3d at 247 n. 3. In *Glenn*, the Supreme Court "directly repudiated the application of any form of heightened standard of review to claims denials in which a conflict of interests is

8

present." *Id.* at 247. Accordingly, the Court weighs an administrator's conflict of interests "as a factor in determining whether there is an abuse of discretion in the benefits denial . . . ." *Id.* A structural conflict of interests is "but one factor among many that a reviewing judge must take into account." *Id.* at 248.

The emphasis which the Court places on the conflict will depend on the particular circumstances of the case. *Glenn*, 554 U.S. at 117, 128 S. Ct. 2343. "The conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* However, the conflict "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce the potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision-making irrespective of whom the inaccuracy benefits." *Id.* In the end, the burden is on the claimant to produce evidence that the administrator's conflict of interests "influenced its benefits decision." *Anderson v. Cytec Indus. Inc.*, 619 F.3d 505, 512 (5th Cir. 2010); *Holland*, 576 F.3d at 249.

In the present case, it is apparent that a structural conflict of interests existed. Defendant was responsible for both determining Plaintiff's eligibility for benefits and paying the benefits. *See Anderson*, 619 F.3d at 512 (the court must take into consideration the conflict of interests inherent in a benefits system where the same entity pays the benefits and possesses discretionary control over the ultimate benefits

9

decision); *Holland*, 576 F.3d at 248. However, Plaintiff has not presented any evidence that the conflict affected Defendant's determination of her eligibility for benefits. "If claimants do not present evidence of the degree of conflict, the court will generally find that any conflict is not a significant factor." *McDonald v. Hartford Life Group Ins. Co.*, 361 F. App'x 599, 608 (5th Cir. 2010) (punctuation omitted).

In contrast, Hartford has presented evidence that, in initially assessing Plaintiff's eligibility for the receipt of benefits beyond July 25, 2008, it obtained a medical record review from an independent medical examiner, Dr. Joanne Werntz. After Plaintiff appealed Hartford's determination, Hartford obtained another medical record review from a different independent medical examiner, Dr. Donald Getz, withholding the report previously obtained from Dr. Werntz. Finally, Plaintiff's appeal was addressed by a different department and person than Hartford's initial investigation as to Plaintiff's eligibility. These facts diminish – but not negate – the impact of Hartford's structural conflict of interests. *See Glenn*, 554 U.S. at 117, 128 S. Ct. 2343 (conflict should be less important where an administrator has imposed claim management checks to increase the accuracy of decision-making); *Anderson*, 619 F.3d at 512 (administrator consulted independent medical experts); *Schexnayder*, 600 F.3d at 470 (court noted the significance of "walling off claims administrators" and "imposing management checks"); *Holland*, 576 F.3d at 249 (administrator submitted applicants' records to independent medical professionals); *McDonald*, 361 F. App'x at 609 (administrator engaged multiple outside specialists).

In summary, Plaintiff did not present any evidence that Hartford's structural

10

conflict influenced its determination, and Hartford presented evidence that it had taken some measures to diminish the conflict's impact. Accordingly, while the Court must still consider the conflict of interests when determining whether Hartford abused its discretion, it is not a significant factor.

## C.    *Supplementation of Administrative Record*

On September 3, 2010 – almost two years after Hartford's final determination had been made – Plaintiff's counsel contacted Hartford and asked for reconsideration of Plaintiff's claim. Plaintiff's counsel attached two doctor's letters which purportedly supported Plaintiff's claim. Plaintiff argues that the Court should consider the letters as part of the administrative record and find that Hartford's refusal to reconsider her claim in light of the additional support constituted an abuse of discretion, citing *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287 (5th Cir. 1999) (en banc). In response, Hartford argues that the letters from Dr. Conn and Dr. Kim should not be included in or considered part of the administrative record.

Regardless of whether Hartford abused its discretion by refusing to consider the letters, they are in the administrative record of this case.[3] The Fifth Circuit has noted: "*Vega* prohibits the admission of evidence to resolve the merits of the coverage determination – i.e. whether coverage should have been afforded under the plan – unless the evidence is in the administrative record . . . ." *Crosby v. La. Health Serv. & Ind. Co.*, 647 F.3d 258, 263 (5th Cir. 2011). The letters are in the administrative record

_____

[3]They may be found on pages 68 and 69 of the sealed administrative record [10].

and, therefore, in evidence. The pertinent issue is not whether the Court should consider them, but, rather, whether Hartford's failure to consider them constituted an abuse of discretion. Indeed, that appears to be the thrust of Plaintiff's argument.

## D.   *Whether Hartford Abused Its Discretion*

Plaintiff advanced several different arguments in support of her contention that Hartford abused its discretion by terminating her benefits and denying her appeal of that decision. The court shall address each in turn.

### 1.   *Hartford's Failure to Consider the Supplemental Materials*

First, Plaintiff argues that Hartford abused its discretion by refusing to reconsider her claim in light of the letters from Dr. Conn and Dr. Kim, which were provided almost two years after Defendant denied her appeal of the termination of benefits. "Because the late-submitted evidence is either cumulative of earlier evidence or largely irrelevant" to Plaintiff's claim, it is not necessary for the Court to address whether Hartford should have reopened Plaintiff's claim and considered the letters at issue. *Anderson*, 619 F.3d at 516. Even if Hartford had considered the materials, it still would not have been an abuse of discretion to deny Plaintiff's claim.

First, Dr. Conn's supplemental letter was based upon an evaluation of Plaintiff during June 2010, while Hartford's determination of Plaintiff's eligibility was based upon her condition in 2008. Accordingly, Dr. Conn's letter is "weakly relevant, at best." *Id.* at 516-17 (where supplemental materials were based on an examination that did not take place during the time period at issue, their relevance was diminished). Furthermore, both letters contain little more than conclusory statements and vague

12

descriptions of Plaintiff's symptoms; they do not contain any empirical evaluations of Plaintiff's conditions or symptoms, or any substantive description of the treatment plan being pursued. Accordingly, the "probative value of both letters is questionable." *Id.* at 517 (vague, conclusory nature of supplemental materials diminished its relevance to determination of eligibility for benefits).

Finally, "[e]ven if the letters were more clearly relevant to the issue before the court, they would not serve as anything more than additional expert opinions," and Hartford was under no obligation to accept the opinions of Plaintiff's treating physicians. *Id.* Accordingly, Hartford's failure to consider the supplemental letters from Dr. Conn and Dr. Kim – which were provided almost two years after its final determination – was not an abuse of discretion.

2.    *Hartford's Failure to Accept the Opinion of Plaintiff's Treating Physician*

Next, Plaintiff argues that Hartford abused its discretion because it did not accept the opinion of her treating physician. "[T]he Supreme Court has explicitly disapproved of a 'treating physician' rule in the ERISA context and held that 'plan administrators are not obliged to accord special deference to the opinions of treating physicians.'" *McDonald*, 361 F. App'x at 610 (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003)). Here, Hartford considered Dr. Conn's opinion – as evidenced by its denial letters of October 24, 2008[4]

---

[4]Hartford's October 24, 2008, letter rejecting Plaintiff's appeal may be found at pages 78 and 79 of the administrative record [10].

and July 24, 2008[5] – and it rejected it in favor of the opinions of the independent medical examiners it had retained. "[T]he job of weighing valid, conflicting professional medical opinions is not the job of the courts; that job has been given to the administrators of ERISA plans." *Holland*, 576 F.3d at 250. Accordingly, the Court finds that Hartford's failure to accept the opinion of Plaintiff's treating physician does not constitute an abuse of discretion.

     3.     *The Social Security Administration Award*

Plaintiff also argues that Hartford abused its discretion because its determination of eligibility for benefits was contrary to the conclusion reached by the Social Security Administration. "Failure to address a contrary SSA award can suggest procedural unreasonableness in a plan administrator's decision," which would justify the Court's giving more weight to an administrator's conflict of interests. *Schexnayder*, 600 F.3d at 471. Likewise, "an ERISA plan administrator's failure to address the Social Security Administration's finding that the claimant was totally disabled is yet another factor that can render the denial of further long-term disability benefits arbitrary and capricious." *Id.* (punctuation omitted). However, a plan administrator is not required "to give any particular weight" to the SSA's findings; in fact, an administrator may simply acknowledge an SSA award and conclude that the evidence supporting the denial of benefits is more credible. *Id.* at 471 n. 3.

---

[5]Hartford's July 24, 2008, letter terminating Plaintiff's benefits may be found at pages 83-87 of the administrative record [10].

According to the notes of Hartford's Appeals Specialist,[6] Deanie Wallis, Plaintiff called Hartford on September 29, 2008, to advise that she had been awarded social security disability benefits. On September 30, 2008, Hartford sent Plaintiff a letter acknowledging the award and requesting that Plaintiff send a copy of the Notice of Award as soon as possible.[7] On October 24, 2008, Hartford made its final decision with regard to Plaintiff's claim, and it did not address the SSA award. On February 12, 2009, Plaintiff sent a copy of the first page of the SSA's Notice of Decision,[8] and Hartford received it on February 20, 2009[9] – over four months after Plaintiff first notified it of the SSA award, and over three months after it had already made its final decision.

Although an administrator's failure to address a contrary SSA award can suggest procedural unreasonableness, in the present case there was nothing for Hartford to consider at the time it made its decision. Plaintiff provided no documentation of the SSA award until over three months after Hartford had made its final decision. At that point, she only provided the first page of the notice, which only

---

[6]Hartford's claim notes can be found at page 111 of the administrative record [10-1].

[7]Hartford's letter of September 30, 2008, can be found at page 81 of the administrative record [10].

[8]See Plaintiff's letter of February 12, 2009, letter and supporting documents at pages 155-160 of the administrative record [10-1].

[9]See Hartford's claim notes at page 109 of the administrative record [10-1].

contained a brief summary of the SSA's findings.[10] The Policy explicitly states that Plaintiff had the burden of providing proof of loss. She failed to provide documentation of the SSA decision in a timely manner, and when she finally provided documentation, it was incomplete. Accordingly, the Court finds that Hartford's failure to consider or address the SSA award was not an abuse of discretion.[11]

### 4. *Hartford's Failure to Administer a Physical Capacity Examination*

Next, Plaintiff argues that Hartford abused its discretion by failing to administer a physical capacity examination. The Policy provides that Hartford will pay a monthly benefit if a claimant submits proof of loss. "Proof of loss" includes, but is not limited to, medical information, documentation of the cause and prognosis of the claimant's disability, physical or diagnostic examinations, and treatment notes. Therefore, as the Policy places the burden of providing proof of loss on the claimant, Hartford did not abuse its discretion by failing to administer a physical capacity examination. *McDonald*, 361 F. App'x at 610. Phrased differently: a plan administrator has no duty to "reasonably investigate a claim because it would be not only

---

[10]See page 156 of the administrative record [10-1].

[11]*See Marrs v. Prudential Ins. Co. of Am.*, No. 10-31224, 2011 U.S. App. LEXIS 20550, at *6 (5th Cir. Oct. 7, 2011) (where "no evidence of any contrary Social Security Administration determination" was submitted to the plan administrator prior to its decision as to a claim for benefits, the award of Social Security benefits did not render the administrator's denial an abuse of discretion); *Burch v. Hartford Life & Acc. Ins. Co.*, 314 F. App'x 750, 753 n. 2 (5th Cir. 2009) (where applicant failed to provide administrator with the basis and reasoning of the SSA's determination, administrator was not obligated to justify its disagreement with the SSA's decision).

inappropriate but inefficient to require the administrator to obtain information in the claimant's control in the absence of the claimant's active cooperation." *Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001).

### D.     State Law Claims

Plaintiff concedes that any state law claims asserted in the Amended Complaint are preempted by ERISA. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's state law claims.

### E.     Breach of Fiduciary Duty

Plaintiff asserted a claim for breach of fiduciary duty, alleging that Hartford had breached its duties under 29 U.S.C. § 1132(a). Section 1132(a)(3) provides that a "participant, beneficiary, or fiduciary" may bring an action "to enjoin any act or practice which violates any provision of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). It is a "catchall" provision, "offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996).

Plaintiff has adequate relief for the alleged improper denial of benefits under Section 1132(a)(1). Accordingly, Section 1132(a)(3) does not provide her with a cause of action. *Tolson v. Avondale Indus.*, 141 F.3d 604, 610 (5th Cir. 1998). As this Court has previously stated, "when a participant wants what was supposed to have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under § 502(a)(1)(B) of ERISA rather than a fiduciary duty claim brought pursuant to § 502(a)(3)." *Saldana v. Aetna U.S. Healthcare*, 233 F. Supp. 2d 812, 815 n. 3 (S.D. Miss.

2002). Accordingly, the Court grants Defendants' Motion for Summary Judgment with respect to Plaintiff's claim for breach of fiduciary duty.

**F.**   ***Intentional Interference***

Plaintiff also alleged that Hartford violated 29 U.S.C. § 1140, which provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with any right to which such participant may become entitled under the plan . . . . It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this Act . . . . The provisions of section 502 shall be applicable in the enforcement of this section.

29 U.S.C. § 1140. Plaintiff has not alleged or argued that she was discharged, fined, suspended, expelled, disciplined, or discriminated against by Defendants. Rather, she alleged that Defendants improperly denied her benefits. Accordingly, Section 1140 is inapplicable to the present dispute, and the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's intentional interference claim. *See Lawrence v. Jackson Mack Sales*, 837 F. Supp. 771, 790 n. 30 (S.D. Miss. 1992) (where there was no suggestion that the claimant's employment relationship was affected by the defendant's actions, she had no cause of action under Section 1140).

### III. CONCLUSION

For all the reasons above, the Court **grants** Defendants' Motion for Summary Judgment [31]. The Court will separately enter an order of final judgment pursuant to Rule 58.

18

SO ORDERED AND ADJUDGED this 31st day of January, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE